# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

REGINA G. DAVIS, PH.D,

Appellant,

v.

DEPARTMENT OF THE ARMY,

Agency.

DOCKET NUMBERS
DA-1221-12-0640-W-6
PH-315H-12-0551-I-3

DATE: January 6, 2017

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Regina G. Davis, Ph.D.</u>, San Antonio, Texas, pro se.

<u>Randy Ramirez</u>, Esquire, Joint Base San Antonio, Fort Sam Houston, Texas, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1 The appellant has filed separate petitions for review of the initial decision in these two joined appeals, which denied her request for corrective action in her individual right of action (IRA) appeal and dismissed her probationary termination appeal for lack of jurisdiction. Generally, we grant petitions such as

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115  (5 C.F.R.  § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petitions for review. Therefore, we DENY the petitions for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        After serving as a contract psychologist employed by Humana/Veritas Healthcare in the agency's Warrior Resiliency Program (WRP) at the Brooke Army Medical Center (BAMC) for just over 8 months, the appellant began a 2-year term appointment in the competitive service in the WRP as a Clinical Research Psychologist, GS-13, effective September 27, 2010.  MSPB Docket No. DA-1221-12-0640-W-5, Appeal File (W-5 AF), Tab 29 at 6, Tab 32 at 1; MSPB Docket No. PH-315H-12-0551-I-1, Initial Appeal File (IAF), Tab 1 at 5.  The appointment was subject to a 1-year trial period.  W-5 AF, Tab 29 at 6.

¶3        Before the appellant's September 27, 2010 appointment, the agency began an Army Regulation (AR) 15-6 investigation into allegations both by and against the appellant arising from her contract employment.  IAF, Tab 18 at 6-14.  The agency completed the investigation after her appointment ended with a November 16, 2010 report.  *Id.*

¶4          According to the report, on February 9, 2011, the appellant allegedly raised her voice to staff in charge of videoconferencing equipment after a staff member inadvertently connected her to the wrong location, and she therefore was not able to converse with a patient.  *E.g.*, MSPB Docket No. DA-1221-12-0640-W-1, Appeal File (W-1 AF), Tab 9 at 356, 415-17, 425-30, 435‑37.  Later that same month, the agency initiated a second AR 15-6 investigation into claims the appellant raised of a hostile work environment.  *Id.* at 362, 364‑65, 371-75.  In a March 2011 report, the investigating officer concluded that the allegations were "not substantiated."  *Id.* at 371.  In April 2011, the appellant refused to attend a meeting to discuss these findings and her request for a transfer.  W-5 AF, Tab 29 at 30-31, 38.  On May 5, 2011, the agency issued the appellant notice that it would terminate her appointment effective May 11, 2011, based on her failure to attend the April 2011 meeting as instructed.  *Id.* at 30-31.

¶5          The appellant filed an appeal, which the Board docketed as two separate actions, *Davis v. Department of the Army*, MSPB Docket No. PH-315H-12-0551‑I-1, concerning her probationary termination, and *Davis v. Department of the Army*, MSPB Docket No. DA-1221-12-0640-W-1, an IRA appeal in which the appellant contended that the agency terminated her in reprisal for protected whistleblowing activity.  IAF, Tab 1; W-1 AF, Tab 1.  Following several dismissals without prejudice and the subsequent refiling of each appeal consistent with the terms of those dismissals, an administrative judge joined the appeals and granted the appellant's motion to transfer the joined appeals to the Board's Dallas Regional Office for hearing.  W-5 AF, Tabs 2-5, 17-18.

¶6          The Chief Administrative Judge in Dallas gave the appellant notice of the elements and burdens necessary for her to establish jurisdiction over and prove the merits of her probationary termination and IRA appeals, reassigned the appeals to another administrative judge in that office, and scheduled a hearing. W-5 AF, Tabs 38, 42-43, 45.

¶7    Following a 3-day hearing, the administrative judge issued an initial decision.  W-5 AF, Tabs 51, 59; MSPB Docket No. DA-1221-12-0640-W-6, Appeal File (W-6 AF), Tabs 1-3, 7.  She found that the Board lacks jurisdiction over the appellant's probationary termination.  W-6 AF, Tab 11, Initial Decision (ID) at 3‑8.  The administrative judge determined that the appellant was not an "employee" with Board appeal rights under chapter 75 of title 5 because she was serving a probationary period and did not have 1 year of current continuous service when the agency terminated her.  ID at 4; 5 U.S.C. § 7511(a)(1)(A).  She rejected the appellant's contention that the time she served as a contract employee for Humana/Veritas should be tacked onto the time she served in her term position to meet the statutory 1-year current continuous service requirement.  ID at 4-5; W-5 AF, Tab 32 at 6.

¶8    The appellant argued that the agency terminated her based on preappointment reasons and subsequently failed to provide her with the procedures set forth in 5 C.F.R. § 315.805, contending that her termination arose out of the first AR 15-6 investigation, which terminated in November 2010, and concerned allegations that she engaged in misconduct while still a contractor.  ID at 5-6; W-5 AF, Tab 32 at 7.  The administrative judge found otherwise, distinguishing the instant appeal from cases where an agency specifically alleges an instance of preappointment conduct in the termination notice as a basis for its action, and determining that the deciding official sought to remove the appellant for her "blatant disregard for authority and failure to follow directions" and not for the misconduct referred to in the agency's AR 15-6 investigations which, by contrast, involved the appellant's alleged confrontational and aggressive behavior towards her colleagues, not her supervisors.  ID at 6-8.  The administrative judge also found that because those investigations were not concluded prior to the appellant's appointment, any consequences that flowed from them could not have occurred until after her appointment.  ID at 8 n.7.  Hence, the administrative

judge found that the appellant failed to establish jurisdiction over her probationary termination appeal.

¶9    In addition, the administrative judge set forth a comprehensive, detailed analysis of the appellant's whistleblowing claims, pursuant to which she found that the appellant had established jurisdiction and a prima facie case of whistleblowing reprisal.  ID at 9-22.  She determined that the appellant made two protected disclosures, the first one on October 21, 2010, when she alleged that without conducting an evaluation, another psychologist changed her diagnosis of a patient so that the patient could attend recruiter school, and the second on February 2, 2011, in which she alleged that an agency psychiatrist had fraudulently changed a Medical Evaluation Board report regarding an individual soldier to reflect a diagnosis of Post-Traumatic Stress Disorder so that he could quality for Government benefits.  ID at 11-21.  The administrative judge, though, found that a third alleged April disclosure to the commanding officer of the BAMC in April 2011 that agency officials had allegedly abused their authority when they allowed fellows in the WRP to provide anonymous written reviews of her work was not a protected disclosure because everyone that provided training to the WRP fellows was subject to the same review process, not just the appellant. ID at 21.  Concerning the appellant's two disclosures that the administrative judge found were protected, she further found that the appellant had established exhaustion of her administrative remedies before the Office of Special Counsel (OSC), and determined that those disclosures could have been a contributing factor in the appellant's probationary termination by virtue of the knowledge/timing test.  ID at 22-24.

¶10   The administrative judge also determined that, notwithstanding the appellant's prima facie case of whistleblower reprisal, the agency established by clear and convincing evidence that it would have terminated the appellant for failing to follow orders to attend the April 2011 meeting even in the absence of

her protected whistleblowing activity.  ID at 24-37.  Therefore, the administrative judge denied the appellant's request for corrective action.  ID at 36-37.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶11     The appellant timely filed separate petitions for review in her probationary termination and IRA appeals, the agency filed a single response to the appellant's petitions for review, and the appellant filed a reply to the agency's response. Petition for Review (PFR) File, Tabs 5-6, 8-9.[2]  The agency filed an additional pleading, which the Clerk of the Board rejected because the Board's rules do not provide for any pleadings other than a petition for review, a cross petition for review, a response to the petition for review or cross petition for review, and a reply to a response.  PFR File, Tab 10; 5 C.F.R. § 1201.114(a)(5).  As instructed by the Clerk of the Board, the agency moved for leave to file the supplemental pleading, which it claimed was necessary to address the factual and legal issues raised by the appellant for the first time in her reply to the agency's response to her petition for review.  PFR File, Tab 11 at 4-5.  The agency also moved for the Board to reject the appellant's reply to its response to her petition for review because her initial and supplemental version of that document are approximately 200 words over the Board's word limit for a reply and the appellant failed to request leave to submit such a noncompliant pleading, which the agency contends the Board erroneously accepted.  *Id.* at 6-8.

---

[2] The agency challenges the timeliness of the appellant's petitions for review.  PFR File, Tab 8 at 8-10.  The Clerk of the Board explained that the appellant filed by e-Appeal two petitions for review in MSPB Docket No. DA-1221-12-0640-W-6 but then filed a petition for review in MSPB Docket No. PH-315H-12-0551-I-3, clarifying that she mistakenly filed this petition for review in MSPB Docket No. DA-1221-12-0640-W-6 and was therefore refiling it under the appropriate docket number.  PFR File, Tab 7.  Though the appellant's petitions were date and time stamped with Eastern Time, the Clerk of the Board considered both of the appellant's petitions for review to have been timely filed because the appellant filed them by e-Appeal from the Central Time Zone, and the timeliness of a pleading is assessed based on the time zone from which the pleading is filed.  PFR File, Tab 7; *see* 5 C.F.R. § 1201.14(m)(1).  The agency identifies no reason on review for us to revisit that determination.

¶12    Addressing the agency's motion, to the extent that the appellant has raised new issues on review, either in her petition or in her reply to the agency's response, the Board generally will not consider them absent a showing that they are based on new and material evidence not previously available despite her due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). In her reply to the agency's response, the appellant does not identify any new evidence, and to the extent that she raises new issues therein, we therefore have not considered them. As for the length of the appellant's reply, although it may be slightly over the word limit for a reply to a response in a single appeal, because it addresses two joined appeals, we exercise our discretion to waive the length limitation. In light of these rulings, we deny the agency's motion to submit a supplemental pleading.

The administrative judge correctly found that the appellant failed to establish jurisdiction over her probationary termination appeal.

¶13    Regarding her probationary termination, the appellant essentially reiterates the arguments she set forth below. She claims that the administrative judge erred in refusing to consider certain evidence that allegedly would establish that the agency, rather than Humana/Veritas, hired her in January 2010, such that she had more than 1 year of current continuous service when the agency terminated her employment in May 2011. PFR File, Tab 6 at 6-7. She asserts that she is an employee under common law doctrine and cites an Equal Employment Opportunity Commission case in support of her assertion. *Id.* at 7-8 (citing *Carranza v. Department of the Army*, EEOC Appeal No. 0120092727, 2010 WL 2029126 (May 11, 2010)). We disagree.

>    *The appellant was not an "employee" with appeal rights under 5 U.S.C. chapter 75.*

¶14    To qualify as an "employee" with appeal rights under 5 U.S.C. chapter 75, an individual in the competitive service, like the appellant, must show that she either is not serving a probationary period or has completed 1 year of current

continuous service under an appointment other than a temporary one limited to a year or less. 5 U.S.C. § 7511(a)(1)(A); *see McCormick v. Department of the Air Force*, 307 F.3d 1339, 1341-43 (Fed. Cir. 2002); *Baggan v. Department of State*, 109 M.S.P.R. 572, ¶ 5 (2008). "Current continuous service" means a period of employment or service immediately preceding an adverse action without a break in Federal civilian employment of a workday. *Ellefson v. Department of the Army*, 98 M.S.P.R. 191, ¶ 14 (2005).

¶15    The administrative judge correctly determined that the appellant failed to establish that she was an employee with Board appeal rights because the record reflects that she was serving in a probationary period at the time of her termination and she did not have 1 year of current continuous service. ID at 3-5. As a contractor, the appellant was not appointed as a member of the competitive or excepted service within the meaning of section 7511(a)(1) and, therefore, her tenure as a contractor before her civil service appointment is not deemed creditable for purposes of establishing jurisdiction. ID at 4; *Johnson v. Merit Systems Protection Board*, 495 F. App'x 68, 71 (Fed. Cir. 2012) (finding that employment as a contractor cannot be tacked onto Federal service); 5 C.F.R. § 315.802(b) (limiting service that counts toward completing probation to "[p]rior Federal civilian service"). Consequently, we agree with the administrative judge's conclusion that the appellant does not qualify as an "employee" pursuant to 5 U.S.C. § 7511. ID at 5.

*The agency did not remove the appellant for preappointment reasons.*

¶16    A probationary employee in the competitive service has a regulatory right of appeal to the Board if she makes a nonfrivolous allegation that she was terminated due to discrimination based on marital status or for partisan political reasons, or because of conditions arising before appointment to the position in question. *Harris v. Department of the Navy*, 99 M.S.P.R. 355, ¶ 6 (2005); 5 C.F.R. §§ 315.805-806. Here, the appellant alleged that she was terminated for preappointment reasons. IAF, Tab 7 at 4-6.

¶17    The administrative judge properly found that the agency did not terminate the appellant for preappointment reasons.  ID at 5-8.  As the administrative judge explained in her initial decision, a termination is based on a preappointment reason when the notice lists a specific example of a preappointment incident and it relates to the stated reason for the termination.  ID at 7.  Although the Board recently found in *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 8 (2016), that an individual is entitled to the procedural requirements set forth in 5 C.F.R. § 315.805 when her termination in based in part on preappointment reasons, that case is distinguishable from the instant matter.  The agency's termination notice relied on the appellant's preappointment probation agreement and his failure to disclose that the agreement prevented him from performing his job duties.  *LeMaster*, 123 M.S.P.R. 453, ¶¶ 8, 10 (2010).

¶18    By contrast, the appellant's termination here was based on her postappointment failure to attend a meeting in April 2011, as instructed.  W-1 AF, Tab 9 at 30-31.  Although the termination letter also referred to the findings of both the November 2010 and March 2011 AR 15-6 investigations that she "engage[d] in conduct with co-workers which has been described as confrontational and aggressive," we agree with the administrative judge that this information was not the stated basis for the termination.  *Id.* at 31; ID at 8.  Rather, it was mentioned merely as background information that the deciding official "also considered."  W-1 AF, Tab 9 at 31.

¶19    On review, the appellant reiterates her claim that the agency terminated her for preappointment reasons, requiring the agency to afford her the procedural requirements set forth in 5 C.F.R. § 315.805.  PFR File, Tab 6 at 8‑10.  Although the appellant fails to differentiate between the different investigations in her petition for review, we note that the first AR 15-6 investigation was the only one that involved the time predating the appellant's September 27, 2010 appointment and it did not concern the misconduct cited in her termination notice, i.e., her alleged "confrontational, aggressive, intimidating, and hostile" conduct toward

her coworkers.  *Compare* W-5 AF, Tab 29 at 8, *with* IAF, Tab 18 at 6-14, 19.  By contrast, the second AR 15-6 investigation began after the appellant's September 2010 appointment and almost exclusively concerned events occurring during her civil service tenure.  IAF, Tab 16 at 3, 9-12.  Although the report indicates that the agency undertook the second AR 15-6 investigation in response to the appellant's claims of a hostile work environment, which date from before her civil service appointment, the investigator was unable to corroborate any of the appellant's accusations and instead reported that the appellant's colleagues, in response to his investigative inquiries, universally described the appellant in terms similar to if not exactly as set forth in her termination notice, cited above.  *Id.* at 9-12.  Because the only references to inappropriate conduct by the appellant are in the agency's report regarding the second AR 15-6 investigation, the record reflects that the agency terminated the appellant for postappointment reasons.

¶20    Accordingly, we find that the administrative judge correctly found that the appellant was not entitled to the procedures set forth in 5 C.F.R. § 315.805 upon her probationary termination.[3]

> *The administrative judge did not abuse her considerable discretion in ruling on witnesses and evidence.*

¶21    The appellant alleges that the administrative judge who held the hearing failed to consider evidence submitted before the Chief Administrative Judge transferred the case to her, and further argues that the administrative judge rejected more than half of her requested witnesses, denying her the ability to fully develop the merits of her appeal.  PFR File, Tab 6 at 10-11.  Lastly, the appellant argues the administrative judge failed to make a proper evidentiary record regarding evidence she excluded from the hearing.  *Id*. at 12.

---

[3] To the extent that the appellant is attempting to raise a due process argument for the first time on review, we find that we are without jurisdiction to consider this claim. PFR File, Tab 5 at 14; *Burnett v. U.S. Postal Service*, 104 M.S.P.R. 308, ¶ 15 (2006).

¶22      An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence and witnesses that have not been shown to be relevant, material, and nonrepetitious. *E.g.*, *Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011); *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); 5 C.F.R. § 1201.41(b)(8), (10). To obtain reversal of an initial decision on these grounds, the petitioning party must show on review that a relevant witness or evidence, which could have affected the outcome, was disallowed. *See Thomas*, 116 M.S.P.R. 453, ¶ 4. Our review of the record indicates that the Chief Administrative Judge explained the reasons why she denied each witness, W-5 AF, Tab 44, and the appellant fails to make the required showing on review of how any of those witnesses would have affected the outcome. Thus, we find that the appellant failed to show that the administrative judge abused her discretion in this regard.

¶23      Similarly, the appellant fails to show how a particular exhibit the administrative judge disallowed, W-5 AF, Tab 55, would have affected the outcome. Moreover, we note that, contrary to the appellant's contention on review, the administrative judge described the exhibit (which involved audio recordings the appellant surreptitiously made and video of the agency's location), in a prehearing conference summary and in a subsequent order. W-5 AF, Tabs 38, 50. Because the evidence does not show that the appellant received an appointment to a civil service position prior to September 27, 2010, it is not relevant to her probationary termination appeal. Based on our review, we find that the appellant failed to establish that the administrative judge erred in excluding this evidence[4] or in her ultimate finding that the appellant failed to establish jurisdiction over her probationary termination appeal.

---

[4] To the extent that the appellant makes the same argument in the petition for review of her IRA appeal, PFR File, Tab 5 at 8, we similarly find that she fails to show that the administrative judge abused her considerable discretion in disallowing the exhibit.

<u>The administrative judge properly denied corrective action as to the appellant's claim of whistleblower reprisal.</u>

¶24 The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that: (1) she engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). In an IRA appeal, the standard for establishing subject matter jurisdiction and the right to a hearing is the assertion of a nonfrivolous claim, while the standard for establishing a prima facie case is that of preponderant evidence. *Langer v. Department of the Treasury*, 265 F.3d 1259, 1265 (Fed. Cir. 2001). When an appellant meets her burden to establish a prima facie case of reprisal for whistleblowing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the appellant's whistleblowing. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 26 (2016).

¶25 The appellant argues that the administrative judge erred in finding that the agency terminated her for the misconduct cited in the AR 15-6 investigations, which she contends the agency based on fabricated documents and then concealed the results.[5] She also reasserts her claim that the agency actually terminated her employment in reprisal for her protected disclosures. PFR File, Tab 5 at 6-8. However, as discussed above, the administrative judge properly found that the basis of the appellant's termination was her failure to follow instructions to attend an April 2011 meeting regarding the results of the second AR 15-6 investigation. ID at 6; W-5 AF, Tab 29 at 7-8. As previously stated, although the termination notice mentions the AR 15-6 investigations, it does not cite them as a reason for

---

[5] Nevertheless, the appellant concedes on review that the agency produced the investigative documents as part of the record in these appeals. PFR File, Tab 5 at 7.

the appellant's termination but instead mentions them only in the context of additional factual background information that the deciding official considered. W-5 AF, Tab 29 at 7-8.

¶26    The appellant also contends that the agency terminated her only after she requested a transfer, and not because she failed to attend the AR 15-6 investigation meeting.  PFR File, Tab 5 at 8-9.  However, the appellant not only fails to explain why agency officials would seek to terminate her because she wanted a transfer, it would seem illogical that this was the real basis for the termination, given that the termination notice indicates that the appellant's request for a transfer was on the agenda for the meeting that she refused to attend. W-5 AF, Tab 29 at 7‑8.  The appellant offers no support for her assertion nor does she identify any authority that would bring such a claim under the Board's jurisdiction and, even if she were to identify such authority, the record does not reflect that she raised this specific issue with OSC in her complaint to exhaust her administrative remedies there.  IAF, Tab 1 at 20-21; *see Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1036 (Fed. Cir. 1993) (finding that the test of the sufficiency of an individual's charges of whistleblowing to OSC is the statement that she makes in the complaint requesting corrective action, not her post hoc characterization of those statements).

¶27    In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administrative*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these

factors together to determine whether the evidence is clear and convincing as a whole. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). The Board must consider all the evidence, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶28     Regarding the strength of the agency's evidence in support of its action, including the testimony provided at the hearing, the record reflects that the appellant engaged in repeated insubordination, failing to follow orders from senior leadership to attend meetings called to discuss the results of the second AR 15-6 investigation. ID at 5-6; W-5 AF, Tab 29 at 7-8. The agency has, therefore, presented strong evidence in support of the appellant's termination. *See Miller v. Department of Justice*, No. 2015-3149, 2016 WL 7030359 (Fed. Cir. Dec. 2, 2016) (referring to the agency's burden as a showing of "independent causation"). As recounted by the administrative judge, we agree that the appellant's defiant refusal to obey orders from senior agency leadership, especially considering her probationary status, is overwhelming evidence that the agency certainly would have terminated her during her probationary period in the absence of her protected whistleblowing activity. ID at 25-26.

¶29     As for the second *Carr* factor, the strength of any motive to retaliate on the part of the agency officials who were involved in the decision, the administrative judge gave serious consideration to the appellant's overarching claim that the agency engaged in a pattern of retaliatory conduct against her, analyzing each of the exchanges which the appellant claimed illustrated her point. ID at 27-36. We agree with the administrative judge that the appellant's allegations involving events that occurred before her protected whistleblowing activity provide little evidence of whether the agency terminated her in reprisal for those subsequent disclosures. ID at 27-30. This includes the appellant's allegations on review regarding her claims of sexual harassment against an agency commander and of physical assault against that commander's wife, both of which allegedly occurred

before the appellant's appointment to the civil service in September 2010. PFR File, Tab 5 at 6. We also agree that the interactions identified by the appellant with her immediate supervisor, rather than reflecting the hostility that the appellant alleged existed between her and her supervisor, instead show that the appellant's supervisor exercised extraordinary patience in the face of the appellant's steadily increasing level of hostility and disrespect. ID at 30-32. Nor is there any support in the record for the appellant's claim that the agency fabricated the results of its investigation of the February 2011 incident in which the appellant allegedly raised her voice to staff involved in setting up a video link for her use, or for her assertion that her supervisor's directive for all employees to meet with their supervisors was somehow retaliatory toward her. ID at 33-35.

¶30     The administrative judge recognized that the appellant's numerous complaints against management, which she raised "to the highest levels of agency authority," could have fostered a motive for agency officials to retaliate against her. ID at 35. Nevertheless, the administrative judge found only weak evidence of any motive to retaliate against the appellant. To that end, the administrative judge found that the appellant's supervisor credibly testified at the hearing that he was unaware of the appellant's higher‑level complaints until after he decided to terminate her probationary appointment. The administrative judge also noted that the supervisor credibly testified that he would have removed any other employee for disobeying a direct order to report for a meeting with their senior supervisory officials. ID at 35-36. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant offers no sufficiently sound reasons for us to upset the administrative judge's credibility determinations.

¶31     As for the third *Carr* factor, any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated, the administrative judge found that the agency's otherwise strong evidence regarding the other *Carr* factors is not undermined by a lack of evidence concerning the treatment of other employees. *Carr*, 185 F.3d at 1323. Although our reviewing court has long held that "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor," and that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," it also has recently observed that "the Government's failure to produce evidence on this factor 'may be at the agency's peril,' considering the Government's advantage in accessing this type of evidence." *Miller*, 2016 WL 7030359, at *3, *8 (quoting *Whitmore*, 680 F.3d at 1374).

¶32     The appellant identified two individuals, one of them her supervisor, who she alleged failed to appear in conjunction with the first of the two AR 15-6 investigations involved here, and she claimed that they suffered no repercussions for their failure to do so. ID at 26-27. The administrative judge distinguished these individuals' behavior because, unlike the meeting the appellant refused to attend, here the record did not reflect that those individuals' sixth-line supervisor (and a commanding General) had directly ordered them to attend the meeting and that their supervisors telephoned them during the meeting to again demand their attendance, thereby supporting the agency's three witnesses' testimony that the appellant's refusal amounted to an "extremely serious" act of misconduct. ID at 25‑26; W-5 AF, Hearing Compact Disc. Further, the earlier meeting the appellant refused to attend was called by the investigator as part of his inquiry, while the second meeting the appellant refused to attend was called by senior leadership to discuss the results of an investigation, thus aggravating the nature of her adamant refusal to attend. ID at 26-27. Thus, the appellant's assertions

do not support an analogy to her situation. Moreover, unlike the situation the U.S. Court of Appeals for the Federal Circuit analyzed in *Miller*, 2016 WL 7030359, at \*8, the agency's evidence on the first and second *Carr* factors here is strong and, in our estimation, more than makes up for any dearth of evidence on the third *Carr* factor.

¶33    Accordingly, we agree with the administrative judge's extensive and thorough analysis, in which she found that the agency established by clear and convincing evidence that it would have terminated the appellant during her probationary period in the absence of her protected whistleblowing activity and so she therefore was not entitled to corrective action.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the

Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.